UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VICTOR DEVON FITZPATRICK,

        Petitioner,

                            Case No. 1:18-cv-516

v.

                            Honorable Janet T. Neff

NOAH NAGY,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. Factual and Procedural Background

Petitioner Victor Devon Fitzpatrick presently is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. A Kalamazoo County Circuit Court jury found Petitioner guilty of two counts of first-degree criminal sexual conduct (CSC I), Mich. Comp. Laws § 750.520b(1)b(b), and two counts of second-degree criminal sexual conduct (CSC II), Mich. Comp. Laws § 750.520c(1)(b). He currently is serving prison terms of 27 ½ to 50 years' imprisonment on each of the CSC-I convictions and terms of 15 to 30 years' imprisonment on each of the CSC-II convictions.

The following facts are taken from the opinion of the Michigan Court of Appeals:

> On April 4, 2015, defendant was out late drinking in Kalamazoo, Michigan, with his cousin Makella Potts, and her friend. At some point that night, defendant went to Makella's house with Makella to go to sleep. Makella decided to go back out and left defendant on the couch in her living room. Their aunt, Carla Potts, was spending the night at Makella's on a separate couch in the living room. The victim, defendant's 14-year-old cousin was also staying in Makella's house that night. Before defendant came back for the night, the victim watched television until 1 a.m. with Carla, and then went to bed with her nieces in a first-floor bedroom.
>
> At some point during the night, the victim awoke to defendant rubbing his penis against her butt. The victim told defendant to stop, but he did not say anything and continued to rub against the victim for another couple of minutes. When defendant stopped, he rolled the victim onto her back, got on top of her, and took off her pants. Defendant then removed his pants and put his penis in the victim's mouth and moved it up and down. After defendant removed his penis from the victim's mouth, he put it into her vagina. Defendant then pushed the victim's bra down and began licking her breasts while his penis was still in her vagina. This continued until there was a knock on the door, at which point defendant stopped, put on his clothes, and left.
>
> The next day, the victim told Makella what happened. The victim was eventually taken to the YWCA, where a nurse performed a physical examination. As part of the exam, the nurse collected the victim's medical history, including the reason for the victim's visit to the YWCA that day. Over defendant's objection, the nurse testified at trial that the victim told her that while the victim was asleep, a man came behind her and rubbed his penis on her butt, then got on top of her and

put his penis in her mouth, then in her vagina. The nurse testified that this continued until the man heard a knock on the door, at which point he left. After hearing the victim's story, the nurse performed a physical examination of the victim and found a ¾-inch abrasion to the victim's genital area on the posterior fourchette, which was consistent with the events that the victim described. Samples were taken from the areas that the victim told the nurse that her assailant had touched, but no saliva or semen was found in any of the samples.

Also at defendant's trial, the prosecution introduced evidence of a sexual assault from 2006 in which defendant was accused of sexually assaulting his 18-year-old stepcousin. In that instance, the victim was sleeping on a couch at Makella's apartment. Defendant came into Makella's apartment after the victim had already fallen asleep, took the victim's pants off, and put his penis into her vagina. When the victim woke up, defendant stopped. The victim quickly put her pants back on and went to Makella's room to call the police, at which point defendant fled.

(Mich. Ct. App. Op., No. 330086, slip op. at 1-2, http://publicdocs.courts.mi.gov/opinions/final/ coa/20170216_ c330086_41_ 330086.opn.pdf (last visited May 15, 2018).[1]

On October 10, 2015, following a three-day trial, the jury found Petitioner guilty of two counts of CSC I and two counts of CSC II. On November 2, 2015, the court sentenced Petitioner as a fourth-offense felony offender, Mich. Comp. Laws § 769.12, to two prison terms of 30 to 50 years on the CSC-I convictions and two terms of 15 to 30 years on the CSC-II convictions. Petitioner moved for resentencing on February 25, 2016. On April 4, 2016, Petitioner was resentenced, and Petitioner's sentences on the CSC-I convictions were reduced to 27 ½ to 30 years each.

Petitioner timely appealed his convictions to the Michigan Court of Appeals, raising the following two grounds for relief:

    I.   The trial court erred in admitting hearsay statements of the nurse examiner.

    II.  The trial court erred when it admitted other acts evidence.

---

[1] Petitioner does not dispute the facts set forth in the opinion of the Michigan Court of Appeals. Indeed, the state court's recital of the facts substantially comports with the summary of evidence provided by Petitioner in his brief in support of his habeas application. (*See* Br. in Supp. of Pet., ECF No. 1, PageID.25-29.)

(Pet., ECF No. 1, PageID.2.) In an unpublished opinion issued on February 16, 2017, the court of appeals, evaluating the claims under state evidentiary rules, affirmed the convictions. Petitioner sought leave to appeal to the Michigan Supreme Court, which denied leave to appeal on September 12, 2017.

On April 30, 2018, Petitioner filed his habeas corpus petition. The petition raises essentially the same two grounds for relief presented in the Michigan Appellate courts:

> I. THE TRIAL COURT ERRED IN ADMITTING THE HEARSAY STATEMENT OF THE NURSE EXAMINER VIOLATING PETITIONER'S RIGHT TO A FAIR TRIAL.
>
> II. THE COURT ERRED WHEN ALLOWING PRIOR ACTS EVIDENCE BE PRESENTED DURING THE TRIAL, VIOLATING DUE PROCESS AND FAIR TRIAL RIGHTS.

(Pet., ECF No.1, PageID.5, 7.)[2]

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[2] Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). It is not entirely clear from the documents attached to the petition whether Petitioner actually presented his constitutional, as opposed to state evidentiary, claims in the state appellate courts. The Court, however, may deny a habeas petition on the merits notwithstanding the failure to exhaust. 28 U.S.C. § 2254(b)(2).

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words,

5

"[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.   Ground I:  Admission of Hearsay Testimony

In his first ground for habeas relief, Petitioner contends that the trial court impermissibly allowed the nurse practitioner to testify about the victim's statements, because the testimony was hearsay and therefore violated his right to due process and a fair trial. The Michigan Court of Appeals concluded that the evidence was admissible for two reasons. First, the court held, the evidence was not admitted to prove the truth of the matter asserted and thus was not hearsay as defined in Mich. R. Evid. 801(c). Second, the court held, the evidence met a valid exception to the hearsay rule under Mich. R. Evid. 803(4), as a statement made for purposes of medical treatment or medical diagnosis in connection with treatment. (Mich. Ct. App. Op., No. 330086, slip op. at 2-3, http://publicdocs.courts.mi.gov/opinions/final/coa/20170216_c330086_41_330086.opn.pdf (last visited May 16, 2018)).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502

6

U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552. Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard. As the Sixth Circuit has recognized, the United States Supreme Court has never held that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause. *Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013). Instead, the Supreme Court has merely "h[e]ld out the possibility that 'the introduction' of 'evidence' in general could be 'so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* at 631 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Such a standard is highly general. "'The more general the rule, the more leeway courts have in

7

reaching outcomes in case-by-case determinations,' – and, it follows, the less likely a state court's application of the rule will be unreasonable." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In the instant case, the state court held that the admission of the victim's statements "fell within an established hearsay exception" for statements made for purposes of medical treatment. *See* MICH. R. EVID. 803(4)). *Id.* "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law." *Id.* at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

### IV.     Ground II:  Admission of Other Bad Acts Testimony

In his second habeas ground, Petitioner argues that he was denied due process and a fair trial when the court admitted evidence that Petitioner was accused of sexually assaulting his 18-year-old step-cousin in 2006. The court of appeals rejected the claim, holding that the evidence was properly admitted under Mich. R. Evid. 404(b).

To the extent that Petitioner continues to argue that the admission of other bad acts was improper under Mich. R. Evid. 404(b), his claim is not cognizable in this proceeding. *Estelle*, 502 U.S. at 67-68. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Moreover, there exists no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate

8

due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is admissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Because there was no constitutional violation in the admission of evidence (bad acts), the state court decision was "far from" an unreasonable determination of the facts in light of the evidence presented. *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001); *see also Bugh*, 329 F.3d at 512.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate);

*Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

An Order and Judgment consistent with this Opinion will be entered.


Dated:  May 18, 2018                             /s/ Janet T. Neff
                                                 Janet T. Neff
                                                 United States District Judge